M. Greenspun v. Commissioner. Rose Greenspun v. Commissioner. Parker-Browne Company v. Commissioner. M. Greenspun Trust No. 1 v. Commissioner. Evelyn D. Greenspun, Residuary Trust v. Commissioner. Iva Bell Greenspun, Residuary Trust v. Commissioner. M. Greenspun and Rose Greenspun, Husband and Wife, Transferees v. Commissioner. Parker-Browne Company, The Greenspun System, Transferee v. Commissioner.
Greenspun v. Commissioner
Docket Nos. 108233, 109441, 112644, 108229, 109438, 112645, 108234, 109440, 112646, 108231, 109439, 112649, 108232, 109437, 112647, 108230, 109436, 112648, 226, 225.
United States Tax Court
1948 Tax Ct. Memo LEXIS 134; 7 T.C.M. (CCH) 509; T.C.M. (RIA) 48135; July 22, 1948
*134 Wm. A. Blakley, Esq., and Hoyet A. Armstrong, Esq., for petitioners. E. G. Sievers, Esq., for respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: Our decisions in the above entitled consolidated cases were entered on the basis of our Memorandum Findings of Fact and Opinion entered April 12, 1944. Decisions in all dockets, except Docket Nos. 108231, 109439 and 112649, were entered under Rule 50. Decisions of no deficiency were entered in the above three dockets indicated by numbers. Such three dockets were the proceedings in M. Greenspun Trust No. 1 for the respective years 1938, 1939 and 1940. All of the decisions under Rule 50 were reviewed by the United States Circuit Court of Appeals for the Fifth Circuit. That Court handed down its opinion in its consolidated Docket No. 11322 on July 19, 1944, , reversing our decisions in the cases of Parker-Browne Company Docket Nos. 108234, 109440 and 112646, and the cases of M. Greenspun Docket Nos. 108223, 109441 and 112644. Because of the existence of the marital community of M. Greenspun and Rose Greenspun the Circuit Court's opinion re the M. Greenspun cases affected a *135 like disposition of the cases of Rose Greenspun Docket Nos. 108229, 109438 and 112645. The Circuit Court remanded the proceedings designated in its consolidated Docket No. 11322 to this Court with directions: (a) To treat as deductible by Parker-Browne Company as a business expense the rentals, up to one cent per pound, payable to Greenspun Trust No. 1 as owner of the cylinders, "except to the extent that on a rehearing they (rentals at one cent per pound) are shown to be excessive and unreasonable and therefore not necessary and proper business expenses"; (b) As to the deductions for bad debt claimed for the year 1940 by M. Greenspun in Docket No. 112644, and Rose Greenspun in Docket No. 112645, the Tax Court is directed by the Circuit Court to make "complete findings of fact as to (1) the existence of the debt, and (2) whether it became worthless within the taxable year 1940, and for its (Tax Court's) determination of the legal effect of the facts so found." The Circuit Court, on April 16, 1947, reversed our decisions and remanded to the Tax Court for further proceedings not inconsistent with its opinion of July 19, 1946 in the consolidated cases in its Docket No. 11322, the *136 cases of Rose Greenspun, our Docket Nos. 108229, 109438 and 112645, the case of Parker-Browne Company, the Greenspun System, Transferee, our Docket No. 225 and the case of M. Greenspun and Rose Greenspun, husband and wife, Transferees, our Docket No. 226. The Circuit Court, on April 16, 1947, reversed in part our decisions in the Iva Bell Greenspun Residuary Trust cases, our Docket Nos. 108230, 109436 and 112648, the Evelyn D. Greenspun Residuary Trust cases, our Docket Nos. 108232, 109437 and 112647, and remanded them to the Tax Court for recomputation under Rule 50 not inconsistent with its opinion of July 19, 1944 in its consolidated Docket No. 11322. The proceedings in Docket Nos. 225 and 226 involve the question of transferee liability for deficiencies in taxes determined by respondent against Parker-Browne Company for the tax years 1938, 1939 and 1940. The petitioners in these dockets admit liability as transferees for such deficiencies as may be held to be due. Consequently, our decisions in such proceedings will be determined by our decisions under mandate and opinion of the Circuit Court entered July 19, 1946 in the Parker-Browne Company cases and will be entered under *137 Rule 50. Our decisions in the Iva Bell Greenspun Residuary Trust cases, Docket Nos. 108230, 109436 and 112648, and in the Evelyn D. Greenspun Residuary Trust cases, Docket Nos. 108232, 109437 and 112647, will be entered under Rule 50 in compliance with the mandate and opinion of the Circuit Court therein entered April 16, 1947. In compliance with the opinion and mandate of the Circuit Court dated July 19, 1946, reversing our decisions in the Parker-Browne Company the M. Greenspun cases and remanding them for rehearing, findings of fact, conclusions of law and decisions on the questions (1) of reasonable cylinder rentals, not in excess of one cent per pound, in the Parker-Browne Company cases, and (2) for complete findings of fact, conclusions of law and decision on the bad debt issue in the M. Greenspun case, Docket No. 112644, and Rose Greenspun case, Docket No. 112645, a rehearing was had in Dallas, Texas, on January 16, 1948. Such rehearing was confined to the submission of evidence on the question of what amount of rentals, not exceeding one cent per pound, for use of the cylinders would be reasonable and hence deductible as an ordinary and necessary business expense. Evidence *138 was so submitted. In view of the opinion of the Circuit Court on the bad debt issue and of the status of the existing record of the evidence on that point, we deemed a further hearing on that question unnecessary and none was had. Under the mandates of the United States Circuit Court of Appeals for the Fifth Circuit, issued on its decisions in the above entitled proceedings in accordance with its opinion handed down July 19, 1946, in the Consolidated cases in its , there are presented for our consideration and decisions the following questions: 1. What amount, not exceeding one cent per pound of gas, constitutes a reasonable rental for use of the cylinders as containers for the distribution by Parker-Browne Company of carbonic acid gas? 2. If it should be held that such reasonable rental is an amount less than one cent per pound of gas, was payment of the difference between such determined reasonable amount of rental and one cent per pound of gas the distribution of an informal dividend to M. Greenspun? 3. Is Parker-Browne Company entitled to deduct for income tax purposes the amount of the market cost of replacement in the *139 respective tax years before us of the cylinders lost or misplaced in such respective years? 4. Are M. Greenspun and Rose Greenspun each entitled to deduct for income tax purposes one-half of community debts, totalling $41,644.41, which were ascertained by them to have become worthless in 1940 and were charged off in that year? Findings of Fact Cylinder rentals. Reference is made to the findings of fact in our original report herein entered April 12, 1944 in respect of the Parker-Browne Company cases, the M. Greenspun and Rose Greenspun cases, the M. Greenspun Trust No. 1 cases, the Evelyn D. Greenspun Residuary Trust case, and the Iva Bell Greenspun Residuary Trust case. Such findings of fact, in so far as they are pertinent to the question of the reasonableness of cylinder rentals now before us will, without repetition here, constitute a part of our findings of fact herein under the mandate of the Circuit Court of Appeals. The facts found and specifically set forth herein are repetitions of some of the findings of fact hereinabove referred to. Reference is here made to the following exhibits in the record of evidence herein, namely, Exhibit No. 26 (the rental contract), *140 Exhibit No. 4, Part 2, (indenture of Trust No. 1), Exhibit No. 4, Part 3 (indenture of Evelyn D. Greenspun Residuary Trust), and Exhibit No. 4, Part 4 (indenture of Iva Bell Greenspun Residuary Trust) and by such reference they are made a part of these findings of fact as if set forth in haec verba. The cylinders in question are made of pressed manganese steel billets and have an almost interminable useful life. Each cylinder is tested before sale and thereafter at five-year intervals by a hydrostatic testing machine that applies internal pressure of 3,000 pounds. A cylinder that meets such test, regardless of how long it may have been in use, is as good as a new cylinder. The pressure in a filled cylinder is about 1,000 pounds. Each cylinder is tested for leakage when filled. In Parker-Browne Company's operations a 50-pound cylinder of gas is sold, emptied and returned for refilling from four to six times a year. A 20-pound cylinder of gas is sold, emptied and returned for refilling from two to four times a year. From 1935 to 1940, inclusive, the price of cylinders, including valves and freight, ranged between $16 and $17.49 each for 50-pound cylinders and $9.61 and $10.89 *141 each for 20-pound cylinders. The record is silent as to the price of cylinders prior to 1935. At December 31, 1938 there were in use 10,352 20-pound cylinders of the then replacement or market value of $133,437.58, and 8,274 50-pound cylinders of the then replacement or market value of $145,622.40, or a total value of $279,059.98. At December 31, 1939 the inventory and replacement or market value of the cylinders in use were the same as in 1938. At December 31, 1940 there were in use 10,602 20-pound cylinders of the then replacement or market value of $143,020.98, and 8,874 50-pound cylinders of the then replacement or market value of $141,984, or a total value of $285,004.98. The foregoing inventories are the cumulative inventories of all prior years back to 1919. The investment in the cylinders represented by the original cost thereof was in each of the years 1938 and 1939, $151,968.18, and in 1940, $164,067.17. Deductions for depreciation on the cylinders have been claimed and allowed from 1920 to 1940, inclusive. At the end of 1940 the accumulated depreciation and deductions allowed therefor, were $101,779.22. In the years 1938, 1939 and 1940 deductions for depreciation *142 on the cylinders were allowed in the respective amounts of $3,172.25, $3,392.12 and $2,953.78. The number of pounds of gas sold and distributed in the cylinders for the tax years here in question was as follows: Pounds
1938
2,298,020
1939
2,246,050
1940
2,376,895
A reasonable rental per annum for the cylinders was 11 per cent of the investment therein represented by the original cost of the cylinders as above found. Opinion The ony direct testimony on the reasonableness of the amount of rentals of cylinders for the shipment of carbonic acid gas is the testimony of witness Beach. His testimony was that such cylinders furnished on a rental basis should return the owner 10 to 12 per cent on his investment after payment of taxes. Other evidence submitted relative to the reasonable amount for such rentals is that a discount in the price of gas to a customer who furnished his own cylinders was one to three cents per pound on the gas so sold. In determining what is reasonable and therefore deductible as a business expense in respect of the cylinder rentals, due consideration should be given to the judgment of the contracting parties in that regard if and *143 in so far as such judgment is found to be expressed in the rental contract. The Circuit Court of Appeals has held in the instant case that Parker-Browne Company was under a legal obligation to pay rent for the use of the cylinders here involved in the amount of one cent per pound of gas shipped therein, but that, for income tax purposes, it was entitled to deduct as a necessary business expense only the amount of such rentals, not exceeding one cent per pound, as should be found to be reasonable. The duty is upon us to make such finding. In approaching a solution of this question we will first examine the rental contract, the relation of the parties thereto and to each other, and the method of its execution to ascertain whether the contract represents an agreement arrived at on the basis of negotiations on behalf of each of the contracting parties acting independently in his own interest. The ascertainment of such fact will serve to indicate whether the amount of rentals agreed upon shall weigh heavily or lightly in our consideration of what was a reasonable rental. The facts found show that Parker-Browne Company began the manufacture and sale of carbonic acid gas in 1911. The gas *144 was distributed to customers in cylinders owned and furnished to it by Morris Greenspun and two other persons at a rental of three cents per pound of gas. At that time Greenspun was a minority stockholder of Parker-Browne Company. His co-owners of the cylinders owned no stock in that corporation. By 1918 Greenspun had acquired full ownership of the cylinders and all of the stock of Parker-Browne Company. In 1918 Greenspun sold the cylinders to Parker-Browne Company for $56,968.18. At that time it appeared to him that Parker-Browne Company was doing "pretty well" financially in business. After the sale of the cylinders to the corporation Greenspun went away for about a year and did not personally manage the business. During that time the business of the corporation "was going pretty bad" and "running into the ground." When he came back he repurchased the cylinders at the price at which he sold them to the corporation. The reason Greenspun reacquired the cylinders is set forth in his testimony as follows: "The reason I acquired it was because as long as I was able to run the business, this was the main investment, every nickle I had was invested in the cylinders. The cylinder *145 is the most important part of the business, and it was my interest to get them back so in case the business was not so good I would have the cylinders. It was my interest to have them back." The resale of the cylinders to Greenspun was authorized by a resolution of the directors of Parker-Browne Company. Such resolution also authorized the corporation to enter into an agreement with Greenspun for the rental of such cylinders on a basis of three cents per pound on all gas sold and delivered therein. Such agreement was executed and carried out. The rental contract as reformed or revised in 1935 provided for a minimum of one cent and a maximum of three cents per pound as cylinder rental. M. Greenspun and his wife owned, in community, all of the stock of Parker-Browne Company when the rental contract was entered into in 1919 and such ownership continued through 1940. In each of the indentures of Trust No. 1, the Evelyn D. Greenspun Residuary Trust and the Iva Bell Greenspun Residuary Trust, M. Greenspun and his wife were the grantors and O. A. Brightwell, Jr., was the trustee. Brightwell was also the secretary and manager and M. Greenspun was the president of Parker-Browne Company. *146 Greenspun and his wife reserved the power in each of the trusts to remove Brightwell as trustee and appoint another as trustee. It is obvious that Greenspun had the power to control the board of directors of Parker-Browne Company and that he could, at his pleasure, also remove Brightwell from his employment and official position with Parker-Browne Company. The rental contract covers only the cylinders which Greenspun purchased from Parker-Browne Company in 1919 and additional cylinders thereafter purchased which he transferred to the Greenspun trusts in 1931, and makes no provision for other cylinders to be furnished for use of Parker-Browne Company on a rental basis. Parker-Browne Company is not obliged under the rental contract to use in its operations only such cylinders as are supplied to it on a rental basis. But when Parker-Browne decided that additional cylinders were required for the distribution of the gas which it manufactured and sold, it bought the required additional cylinders in its own name, with its own money, and reimbursed itself therefor by charging the amount of the purchase cost to moneys due from it as rentals. Neither Greenspun nor the trusts involved were *147 required to turn a hand in making such purchase. Obviously, they did not even determine whether they would or should make the investment. However, the rental contract was carried out as if Greenspun and/or the trusts had the irrevocable right to furnish for rental all of the cylinders required in the business of Parker-Browne Company. The rental contract provides that when a cylinder is bought and credited to Greenspun and/or the trusts Parker-Browne Company is responsible, at its own expense, not only for the testing, repair and upkeep of the cylinder, but also for the repairs or replacement of broken, worn out, lost or obsolete parts of the cylinder. Parker-Browne Company is obligated under the rental contract, upon demand of the owner, to replace a lost cylinder or pay therefor the then market value of a new cylinder. In other words, when once a cylinder was purchased it became an assured income-producing asset in the hands of Greenspun and/or the trusts, entailing no expense of upkeep or hazard of loss. By reason of the almost interminable useful life of the cylinders and the fact that Parker-Browne Company bore the full burden of expense and the risk of ownership of the cylinders, *148 it is apparent that the actual loss by depreciation to the owner thereof was negligible. Consequently the substantial deductions allowed for depreciation constitute in practical effect a gratuitous tax benefit. It would, indeed, be difficult to envisage a more profitable and economically secure investment arrangement from the standpoint of Greenspun and the trusts. It is as nearly proof against possible financial loss or the necessity for the exercise of business or financial responsibility on the part of the owner as the genius of the human mind could devise in respect of the subject matter. Yet, the record discloses that the owner of the cylinders claimed, and was allowed for tax purposes, deductions for depreciation thereof in substantial amounts. It cannot be deduced from the evidence that the sale of the cylinders to Greenspun and the rental thereof by Parker-Browne Company was of business or financial advantage to the latter. All of the advantage thereof was on the side of Greenspun. We think it apparent that Greenspun had the unfettered control of Parker-Browne Company and that he had the power to, and did, dictate the procedure of the sale of the cylinders to him and the *149 terms of the rental contract. The rental contract was in effect wholly unilateral in its execution and economic advantages and does not reflect an agreement between two parties exercising independent volition and judgment. We think it obvious from the facts and circumstances above detailed that Greenspun directed the transaction of the sale to him of the cylinders and the rental thereof to Parker-Browne Company on such terms as he deemed would best subserve his own personal interests, and that the financial interest of Parker-Browne Company was subordinated thereto. In this view we can give little weight to the terms of the rental contract in our consideration of what is a reasonable amount for such rentals or what basis should be used for the computation of a reasonable amount of rentals. Therefore, within the limits prescribed by the Circuit Court of Appeals, we have found what we believe is the basis for the computation of a reasonable rental for the cylinders. Witness Beach who had been engaged for many years in a business similar to that of Parker-Browne Company, namely, in the manufacture and sale of carbonic acid gas distributed in cylinders, testified that in his opinion *150 a return of 10 or 12 per cent on the investment after payment of taxes would be a reasonable rental for the cylinders here in question. The testimony showed that this was the only rental contract of its kind and that other manufacturers of carbonic acid gas distributed it in their own cylinders and occasionally in cylinders of the purchasers. We have found that 11 per cent of the original cost of the cylinders is a reasonable annual rental for the cylinders. Our determination that 11 per cent of the investment was a reasonable rental is made without consideration of the question of taxes on such income. We think the amount of rental which we have found to be reasonable is amply supported by the record herein. It will be observed from an examination of our findings of fact that the rental of one cent per pound of gas which Parker-Browne Company is obligated to pay for use of the cylinders under the rental contract exceeds in each of the taxable years before us the amount of such rentals which we have determined to be reasonable. Accordingly, Parker-Browne Company will be entitled to a deduction as an ordinary and necessary business expense for cylinder rental in each of such taxable *151 years only in the amount which we have determined to be reasonable as such rental. The second question for our decision is whether the excess of the cylinder rental computed at one cent per pound of gas over the amount of the rental which we have herein determined to be reasonable was an informal dividend to M. Greenspun. The law of the case is that the rental contract here involved was a valid and legally binding contract for the payment of a rental of one cent per pound. Hence, the full amount of such payment so made by Parker-Browne Company was the payment of rental. By the same token the payee thereof was entitled to, and did, receive the full amount of such payment as rental. We hold, therefore, that the excess of the payment so made over the amount which we have hereinabove determined to be reasonable as rental was not an informal dividend or a distribution of profits to M. Greenspun. The third question for our decision is whether Parker-Browne Company was entitled to deduct for income tax purposes the market cost of replacement in the respective tax years before us of the cylinders lost or misplaced in such respective years. Findings of Fact The rental contract here *152 involved provides in paragraph III thereof as follows: "In further consideration of such lease, second party expressly agrees to continue to replace all steel gas drums which may be lost or misplaced by second party, and/or to pay the market value for all steel gas drums which may be lost or misplaced by second party. In this connection it is understood and agreed that as to whether or not said drums so lost or misplaced shall be replaced or paid for by second party, the option of first party shall govern, and he may, at his option, demand either replacement or payment of the market value, as he may determine, and may likewise demand full or partial replacement or payment at any time. After any such demand by first party, second party shall have a reasonable time only in which to replace or pay for such drums * * * In determining the amount to be paid for lost drums, it is agreed that such amount shall be based on the market cost of replacement prevailing on dates such drums are considered lost or misplaced by second party, irrespective of depreciation or book values on said drums." Cylinders were lost in the years of an average total replacement or market value as follows: 1938
$3,197.25
1939
1,827.16
1940
1,637.60
*153 Parker-Browne Company accrued a liability on its books and deducted as an ordinary and necessary business expense in each of the above designated years the respective amounts of the above indicated cost of such lost cylinders. Respondent disallowed such deductions. Opinion Parker-Browne Company was on the accrual basis of accounting. Under the law of the case the rental contract here involved is valid and binding on the parties thereto. Under the terms of such contract the liability of Parker-Browne Company to replace or pay the then market value of lost cylinders accrued in the year of such loss. It appears from the findings of fact herein that the owner of the cylinders had the option to require either replacement of the cylinders or payment therefor. It appears to us that, measured in dollars, the cost of replacement and the payment of the market value of such lost cylinders would be the same. Since under the rental contract the obligation to replace or pay for the lost cylinders was a necessary expense imposed on Parker-Browne Company in the rental contract, such obligation in the respective amounts for the taxable years before us was properly accrued. Accordingly, *154 we hold that such accruals are deductible by Parker-Browne Company as an ordinary and necessary business expense. The fourth question for our decision is whether M. Greenspun and Rose Greenspun, his wife, in our Docket Nos. 112644 and 112645, are each entitled to deduct for income tax purposes one-half of community debts which were ascertained by them to have become worthless in 1940 and were charged off in that year. Findings of Fact In 1940 Morris Greenspun and Rose Greenspun, his wife, were the owners in community of a valid and existing indebtedness in the amount of $24,738.08 due from Calusa Oil Corporation and of indebtedness in the sum of $16,906.33 due from Greenspun System, Inc., and each such indebtedness was by them ascertained to be worthless and was charged off in that year. Each such indebtedness became worthless in 1940. Opinion The record discloses that subsequent to the time our original Memorandum Findings of Fact and Opinion was entered herein the respondent agreed in writing that the indebtedness set out in our findings of fact above was a valid and existing indebtedness. By virtue of such agreement the existence of the indebtedness in question was established *155 and we have so found. The Circuit Court of Appeals in reversing us on this issue held that we were in error in holding there was no evidence that the debt became worthless in 1940. On that point the Circuit Court, in its opinion as originally handed down on July 19, 1946, said: "* * * it is quite apparent that, under the impression that the amendment of 1942 was applicable, its findings as to the worthlessness in 1940 of the debt are not responsive to the legal issue tendered under the statute as it existed in 1940. This issue was whether the debts were ascertained to be worthless and charged off in the taxable year. If the rule followed in the Second Circuit is to be applied, that ascertainment was conclusive in favor of the taxpayer. If the rule laid down in the Fifth Circuit is to be applied, that ascertainment was prima facie evidence of worthlessness and controlling unless the evidence also showed that the taxpayer really ascertained their worthlessness in earlier years. The Tax Court, treating the matter as though the taxpayer's actions were without bearing on the determination of the issue, deliberately denied them any weight." The Circuit Court on August 22, 1946 revised *156 its opinion by striking therefrom the language above quoted and substituted therefor the following language: "* * * Its conclusion that such evidence is wholly lacking as to No. 1 is contrary to the agreement of the parties that there was a valid existing indebtedness in the amount claimed. Its conclusion that such evidence is wholly lacking as to No. 2 ignores undisputed testimony." The evidence establishes that petitioners made an ascertainment that the indebtedness became worthless in 1940 and charged it off in that year. There was no evidence to controvert the correctness of such ascertainment or that the indebtedness was charged off in 1940. We hold for the petitioners on this issue and that each of them is entitled to deduct one-half of the amounts thereof in their income tax returns for the year 1940. Decision will be entered under Rule 50 in each docket under remand.